IN THE UNITED STATED DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| TSVETELINA TSEKOVA<br>14701 Mockingbird Drive<br>Germantown, MD 20874<br>Montgomery County<br>          *Plaintiff*,<br><br>v.<br><br>PCS MOBILE SOLUTIONS, LLC<br>251 Little Falls Drive<br>Wilmington, DE 19808<br><br>and<br><br>EXCLUSIVE WIRELESS, INC.<br>1320 W. Herndon Avenue<br>Fresno, CA 93711<br><br>and<br><br>DAVE NAVARRE<br>5042 Blue Springs Drive<br>Spencer, IN 47460<br>          *Defendants*. | **CIVIL ACTION NO.**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Tsvetelina Tsekova ("Plaintiff" or "Tsekova"), an individual, through undersigned counsel, hereby states the following as her Complaint against Defendants, PCS Mobile Solutions, LLC ("PCS"), a Delaware Limited Liability Company, Exclusive Wireless, Inc. ("Exclusive", a California Corporation, and Dave Navarre, an individual (collectively "Defendants"). In support thereof, Plaintiff alleges as follows:

    **I.**    **PARTIES**

1. Tsvetelina Tsekova is an individual residing at 14701 Mockingbird Drive, Germantown, MD 20874, which is in Montgomery County, Maryland.

Page **1** of 19

2. Defendant PCS Mobile Solutions, LLC is a Delaware Limited Liability Company with a registered corporate address of 251 Little Falls Drive, Wilmington, DE 19808.

3. Upon information and belief, PCS is not registered to do business in Maryland, and their principal place of business is located in Michigan.

4. Defendant Exclusive Wireless, Inc. is a California Corporation, with a registered corporate address of 1320 W. Herndon Avenue, Fresno, CA 93711.

5. Exclusive Wireless, Inc. is registered to do business in Maryland, with a registered address of 5000 Thayer Center, Suite C, Oakland, MD 21550, which is in Garrett County, Maryland.

6. Exclusive Wireless, Inc. has a place of business within Maryland located at 12101 Winchester Road, Spc. 2, La Vale, MD 21502, which is in Allegany County, Maryland.

7. Dave Navarre is an individual, previously known to be an employee of PCS Mobile Solutions, LLC with a current address of 5042 Blue Springs Drive, Spencer, IN 47460.

8. At all times material hereto, Defendants acted and/or failed to act in person and/or through duly authorized agents, servants, workmen, and/or employees, acting on behalf of Defendants.

## II. VENUE AND JURISDICTION

9. This Court has original jurisdiction of this matter under 28 U.S.C. §1332(a), as the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is further between citizens of different states. This matter further involves laws of the United States, over which this Court has original jurisdiction under 28 U.S.C. §1331.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(3), as a Defendant Exclusive Wireless, Inc. is subject to this court's personal jurisdiction with respect to this action due to residing in, maintaining a physical address in and conducting business in this district, and there is not otherwise any district in which an action may otherwise be brought.

### III. FACTUAL BACKGROUND

11. This action is brought by Plaintiff, a wireless customer of T-Mobile who, as a result of the conduct of Defendants, has lost over a hundred thousand dollars worth of her property in an incident of an identity theft crime known as "SIM swapping."

12. A subscriber identity module, widely known as a "SIM card," stores user data in phones on the Global System for Mobile (GSM) network, the radio network used by T-Mobile to provide cellular telephone service to its subscribers.

13. SIM cards are principally used to authenticate cellphone subscriptions, as without a SIM card, GSM phones are not able to connect to T-Mobile's telecommunications network.

14. However, if placed in the wrong hands, a SIM card can also be used to steal someone's identity.

15. A SIM-swap can be particularly devastating because many internet services – including email, online banks, and cryptocurrency exchanges, rely on mobile phone numbers to help users recover and/or validate account access.

16. As stated by the FBI, "[o]nce the SIM is swapped, the victim's calls, texts, and other data are diverted to the criminal's device. This access allows criminals to send "Forgot Password" or "Account Recovery" requests to the victim's email and other online accounts associated with the victim's mobile telephone number." https://www.ic3.gov/Media/Y2022/PSA220208.

17. One way in which this occurs, according to the FBI, is that third parties will "pay off a mobile carrier employee to switch a victim's mobile number to a SIM card in the criminal's possession." *Id.*

18. In the instant matter, on or around November 14, 2021 a T-Mobile tablet computer known as a "REMO" device under the control of Defendant Exclusive Wireless, Inc., through their

employees and agents acting outside of the scope of their duties, was knowingly and affirmatively stolen or permitted to be stolen.

19. This REMO device would later be used to illegally access Plaintiff's wireless cell phone account and perform an unauthorized SIM-swap to change control of Plaintiff's phone to a different phone not under her control.

20. On or around November 16, 2021, Dave Navarre, under the direction and control of PCS Mobile Solutions, LLC, and outside of the scope of his duties, used his credentials, or permitted his credentials to be used, in order to knowingly, affirmatively and illegally access Plaintiff's wireless cell phone account and perform an unauthorized SIM-swap to change control of Plaintiff's phone to a different phone not under her control.

21. As a result of Defendants' misconduct as alleged herein, including gross negligence in protecting customer information, negligent hiring and supervision of personnel, and violations of federal and state laws designed to protect wireless service consumers, Plaintiff had their cryptocurrency stolen.

22. Said cryptocurrency had an estimated value at the time of loss of approximately $128,724.88.

23. This theft of Plaintiff's property was a direct result of the intentional actions and negligent practices of Defendants.

24. The full extent of their participation is known only to Defendants and will need to be uncovered throughout the course of discovery. Upon information and belief, this participation includes, but is not limited to: Defendants knowingly, intentionally, recklessly and/or negligently providing access to customer accounts to individuals which they know, or should have known, have no right to access those accounts; Defendants taking affirmative and intentional steps to conceal the SIM-swap occurrence or failing to alert the customer, law enforcement, or anyone else (including

T-Mobile's help desk) in a timely fashion of the occurrence of such an attack, the theft of their REMO device, or the use of their credentials; Defendants intentionally and affirmatively destroying or failing to preserve evidence they knew, or should have known, would be the subject of litigation and which would enable customers such as Plaintiff to track their stolen property and identify those responsible; Defendants intentionally concealing the identifies of those responsible; Defendants intentionally, negligently and/or recklessly failing to follow protocols and procedures ostensibly put in place by Defendants, statutes and/or T-Mobile, USA Inc., in order to avoid these kinds of issues; and otherwise taking action or failing to take actions which perpetuated the theft of Plaintiff's property and the benefit and use of the same.

15.   Specifically, the following property was stolen from Plaintiff on or around November 16, 2021, as a direct and proximate result of Defendants knowing and intentional acts and omissions:

| Date of Theft | Location From Which Assets Were Stolen | Cryptocurrency / Assets Stolen | Approximate Value of Funds/Assets Stolen |
|---|---|---|---|
| Nov. 16, 2021 | Coinbase | 7.15424628 BADGER | $205.83 |
| Nov. 16, 2021 | Coinbase | .15971417 BTC | $10,177.18 |
| Nov. 16, 2021 | Coinbase | .01637916 BTC | $1,000.00 |
| Nov. 16, 2021 | Coinbase | 1,382.30217725 DOGE | $330.72 |
| Nov. 16, 2021 | Coinbase | 23.83848892 ETH | $108,953.34 |

| Nov. 16, 2021 | Coinbase | 3.3361233 LTC | $800.87 |
| --- | --- | --- | --- |
| Nov. 16, 2021 | Coinbase | .45623963 MKR | $1,290.58 |
| Nov. 16, 2021 | Coinbase | 982.42398527 NU | $866.50 |
| Nov. 16, 2021 | Coinbase | 46,416,715.22421538 SHIB | $2,304.59 |
| Nov. 16, 2021 | Coinbase | 2,379.655122 XRP | $2,795.27 |
| | | TOTAL | $128,724.88 |

25. Plaintiff was a victim of a SIM-swap and subsequent theft that was, if not entirely perpetrated by, then at the very least effectuated and facilitated by Defendants.

26. Plaintiff did not authorize Defendants or anyone else to use, disclose, share, or access her confidential information which was maintained on her cellular account.

27. On the contrary, Plaintiff had an objectively reasonable expectation and a fundamental right to conduct her personal activities without observation, intrusion or interference.

28. Therefore, any use, disclosure, or access to Plaintiff's account or confidential information on or around November 16, 2021 was unauthorized and unlawful.

29. Upon information and belief, Defendants, despite a legal obligation to do so, abjectly failed in their duty to safeguard Plaintiff's personal and financial information by providing unauthorized access to Plaintiff's confidential information and accounts.

16. Upon information and belief, Defendants failed to implement, maintain or adhere

to security policies and procedures sufficient to prevent the unauthorized access to Plaintiff's confidential information and accounts.

17. Upon information and belief, Defendant failed to properly train and supervise its employees to prevent the unauthorized access to Plaintiff's confidential information and accounts.

18. Upon information and belief, Defendants could have reasonably foreseen the consequences of failing in their duty to implement, maintain, adhere to and execute sufficient security policies and practices to prevent the unauthorized access to consumer data, including that of Plaintiff.

19. Upon information and belief, Defendants' systems, policies, and procedures allow their officers, agents, and employees to exceed the authorized access to customers' accounts without permission or justification.

20. The damage suffered by Plaintiff is directly related to the wrongful conduct of Defendants' intentionally and affirmatively allowing the unauthorized access to Plaintiff's wireless account.

21. Indeed, but for Defendants' reckless disregard of their obligations, Plaintiff would not have been damaged.

22. Defendants knowingly, intentionally, and/or affirmatively:

   a. failed to comply with contractual obligations, including with regards to changing passwords on a regular basis, having sufficiently complex passwords on their devices, sufficiently staffing their stores so that an employee was always on the floor, clicking on phishing links, providing their passwords to third parties, and failing to promptly report the theft of the REMO device and the compromised password to T-Mobile, Plaintiff, or law enforcement;

   b. failed to establish, enforce or adhere to rules sufficient to ensure only authorized

      persons have access to customer accounts;

c. failed to establish, enforce or adhere to appropriate rules, policies or procedures for the supervision and control of its officers, agents or employees;

d. failed to establish, enforce or adhere to rules, or provide adequate supervision or training sufficient to ensure that all of its employees or agents follow the same policies and procedures. For example, upon information and belief, Defendants failed to follow the staffing requirements of their service contract with T-Mobile, and further failed to train their employees in accordance with the requirements of that contract, as well as failing to perform mandatory background checks on their employees;

e. failed to adequately safeguard and protect their devices and accounts, so unauthorized third parties were able to obtain access to Plaintiff's account(s);

f. permitted the sharing of and access to user credentials among agents or employees, thus reducing likely detection of, and accountability for, unauthorized access;

g. failed to suspend user credentials or devices in a reasonable time. For example, while the REMO device in this action was purportedly stolen at 12:30 pm on November 14, 2021, it was allegedly not reported stolen until after 2:30 pm (if it was reported at all), and no action was taken to limit the usage of that device until after the theft of Plaintiff's property almost 2 days later;

h. failed to adequately train and supervise their agents and employees, allowing its agents or employees, without authorization or approval, to unilaterally access and make changes to customer accounts as if the customer had so authorized;

  i. allowed porting out of phone numbers without properly confirming that the request was coming from legitimate customers;

  j. failed to build adequate internal tools to help protect the customers; and against hackers and account takeovers, including protection from phone porting and wrongdoing by its own agents or employees acting on their behalf or on behalf of or at the request of a third party.

23. As a result of the foregoing acts, errors and omissions by Defendants, and others as will be established throughout discovery of this action, Plaintiff has been damaged in an amount that will be proven at any ultimate hearing or trial.

24. Plaintiff has duly performed all of their duties and obligations, and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or else have been excused or waived.

25. Plaintiff therefore seeks compensatory and equitable relief restoring them to the assets and funds which were illegally taken from them.

**IV.** **CAUSES OF ACTION**

<u>**Count I**</u>
**Violation(s) of the Maryland Consumer Protection Act ("CPA")**
**Against Defendants PCS and Exclusive**

26. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

27. Maryland's Consumer Protection Act, Maryland Code §13-301, defines unfair or deceptive trade practices to include any:

  (1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading customers; [and]

  (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing

concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same….

28. Defendants intentionally, knowingly, and affirmatively made material misrepresentations and omissions concerning the facts surrounding the theft of Plaintiff's property and its safeguarding of Plaintiff's CPNI, such as who was involved, how credentials were accessed, and failing to report the matter to law enforcement. A reasonable person would attach importance to these matters.

29. A reasonable person, such as Plaintiff, would be deceived and misled by Defendants' misrepresentations.

30. Defendants' intentional and affirmative actions detailed herein constitute an unlawful business act or practice.

31. Due to the nature of Defendants' actions, Plaintiff could not have reasonably avoided the harms incurred.

32. As averred herein, Plaintiff has suffered damages as a result of Defendants' unfair or deceptive trade practices.

33. Plaintiff seeks damages, including attorneys' fees, costs and expenses for Defendants' knowing and intentional violations of the CPA.

WHEREFORE, Plaintiff demands entry of judgement against Defendants PCS and Exclusive for damages, including compensatory damages, attorneys' fees, interest, costs and expenses under the CPA, and any other relief deemed just and proper.

## Count II
### Negligent Hiring, Retention and Supervision
### Against Defendants PCS and Exclusive

34. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

35. At all material times herein, Defendants' agents, officers, and employees, including, but not limited to, those directly or indirectly responsible for or involved in allowing unauthorized access to Plaintiff's confidential and proprietary account information, were under Defendants' direct supervision and control.

36. Upon information and belief, Defendants intentionally, knowingly and affirmatively hired, retained, controlled, trained and supervised the officers, agents and employees under its control in a negligent fashion, or knew or should have known that such officers, agents and employees could allow unauthorized access to customer accounts, including that of Plaintiff.

37. Upon information and belief, Defendants intentionally, knowingly and affirmatively failed to implement systems and procedures necessary to prevent their officers, agents and employees from allowing or obtaining unauthorized access to customer accounts, including that of Plaintiff.

38. Upon information and belief, Defendants' hiring, retention, control, training and supervision allowed the unauthorized access to Plaintiffs' accounts resulting in damages to Plaintiff.

39. Defendants' failure to exercise reasonable care in screening, supervising, and controlling its officers, agents and employees was a breach of its duty to its customers, including Plaintiff.

40. Defendants' duty to their customers and foreseeable victims to protect their customers' data from unauthorized access is required by contract, federal and state law.

41. It was entirely foreseeable to Defendants that unauthorized persons would attempt to gain unauthorized access to T-Mobile customers' data and, despite this, Defendants knowingly and affirmatively failed to implement sufficient safeguards and procedures to prevent their officers, agents and employees from granting or obtaining such unauthorized access.

42. Upon information and belief, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized and/or ratified the conduct of their officers, agents and employees.

43. As a direct consequence of Defendants' hiring, retention, control and supervision of its officers, agents and employees, who enabled or obtained the unauthorized access to Plaintiff's account, Plaintiff was damaged through the loss of their property as described herein and as will be established at any ultimate hearing or trial.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants, for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count III
### Violation of the Stored Communications Act
### Against All Defendants

44. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

45. Under the Stored Communications Act ("SCA"), 18 U.S.C. §2701 *et seq.*, "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. §2702(a)(1).

46. Section 2702(a)(2) of the SCA further states:

> [A] person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service (A) on behalf of, and received by means of electronic transmission from (or created by means of electronic transmission from), a subscriber or customer of such service; [or] (B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for the purposes of providing any services other than storage or computer processing….

47. Although the SCA contains several exceptions to the prohibitions set forth in Sections 2702(a)(1) and (2), none of them are applicable to the circumstances at issue in this case.

48. The SCA creates a private right of action for those "aggrieved by any violation" of its

provisions. 18 U.S.C. §2707(a).

49. The conduct of Defendants, as alleged herein, constitutes a knowing and/or intentional violation of the SCA's Section 2702(a).

50. Plaintiff has been "aggrieved" by the conduct of Defendants, as alleged herein, in that Plaintiff's property has been stolen as described herein.

51. Pursuant to the applicable provisions of the SCA, Plaintiff is entitled to actual and statutory damages, as well as reasonable attorneys' fees and costs. See 18 U.S.C. §2702(c).

WHEREFORE, Plaintiff demands entry of a judgment against Defendants, for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

## Count IV
### Violation of the Computer Fraud and Abuse Act (CFAA)
### Against All Defendants

52. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

53. The CFAA governs those who intentionally access computers without authorization or who intentionally exceed authorized access and as a result of such conduct, cause damage and loss.

54. As set forth in the CFAA, the term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser [*sic*] is not entitled so to obtain or alter." 18 U.S.C. §1030(e)(6).

55. As alleged herein, a SIM-swap attack requires the intentional access to customer computer data by Defendants which exceeds its authority, and which conduct has caused damage and loss.

56. Defendants are subject to the provisions of the CFAA.

57. Defendants' conduct, as alleged herein, constitutes a knowing violation of the

CFAA.

58. Defendants are also liable for the acts, omissions, and/or failures, as alleged herein, of any of its officers, employees, agents or any other person acting for or on behalf of Defendants.

59. Defendants violated their duty under the CFAA by exceeding their authority to access the computer data and breach the confidentiality of the proprietary information of Plaintiff by using, disclosing, or permitting access to Plaintiff's CPI and/or CPNI without the consent, notice and/or legal authorization of Plaintiff as required by the CFAA.

60. Section 1030(g) of the CFAA provides:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involved 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i). Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages. No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage….

61. Plaintiff alleges they have suffered damages which exceed the threshold of $5,000.00 as required by Section 1030(c)(4)(A)(i)(I) of the CFAA.

62. Plaintiff has brought this claim within two (2) years of the date of discovery of the damage pursuant to Section 1030(g) of the CFAA.

63. Upon information and belief, Defendants' conduct as alleged herein constitutes a violation of Section (a)(5)(A) of the CFAA.

64. Upon information and belief, Defendants' conduct as alleged herein may constitute an intentional violation of Section (a)(5)(C) of the CFAA.

65. As a direct consequence of Defendants' violations of the CFAA, Plaintiff has been damaged as set forth throughout this Complaint, plus fees and costs, including reasonable attorneys'

fees.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants, for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

## Count V
### Conversion
### Against All Defendants

66. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

67. On or around November 16, 2021 Plaintiff had actual or constructive possession of certain property, in the nature of cryptocurrency, and/or an immediate right to possession of that property as outlined throughout this Complaint.

68. Plaintiff remains entitled to the possession of her property, which at the time of the theft was worth at least $128,724.88.

69. On or around November 16, 2021 Defendants took the property described above from Plaintiff's possession as described above and converted the same to their own use.

70. Defendants, through their action, inaction, and conduct deprived Plaintiff of their right to use and/or possession of that property, without Plaintiff's consent and without legal justification.

71. As a proximate result of the wrongful, intentional, and knowing conduct of Defendants as herein alleged, Plaintiff has been damaged in the sum to be proven at trial, but of at least $128,724.88, with interest accruing from the date each component of said sum was converted by Defendants.

72. As a further proximate result of the Defendants' acts herein alleged, Plaintiff has also expended substantial sums of time and money in pursuit of the sums converted by Defendants. The full amount and extent of those damages are presently unknown. As a result, Plaintiff is entitled to

specific recovery of their wrongfully converted funds and property and any benefits derived therefrom, or, in the alternative, damages in the sum of at least $128,724.88.

73. Upon information and belief, Plaintiff alleges that Defendants have engaged in despicable conduct as herein alleged, with an intent to injure Plaintiff and to subject Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights and that said actions were done intentionally, knowingly, fraudulently, maliciously and oppressively. Plaintiff is therefore entitled to punitive or exemplary damages against Defendants in an amount sufficient to punish and make a public example of each of the Defendants.

74. Plaintiff has suffered and will continue to suffer damages due to the conduct of Defendants as set forth herein.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

## Count VI
## Civil Conspiracy
## Against All Defendants

75. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

76. As set forth throughout this Complaint, there did exist a combination of two or more persons acting with a common purpose to do an unlawful act, namely, to deprive Plaintiff of their right to, possession, and use of their cryptocurrency.

77. Defendants have taken multiple steps to effectuate that common purpose, through utilizing the Exclusive Wireless REMO Devices and PCS Mobile Solutions' and Dave Navarre's user credentials, swapping Plaintiff's SIM-card to a SIM-card under Defendants' control, logging into Plaintiff's cryptocurrency account(s), stealing Plaintiff's cryptocurrency, concealing the identities of those individuals responsible, and refusing to provide information which would have

allowed Plaintiff to attempt to regain their property.

78. Defendants took these actions without justification, and with the intent to injure Plaintiff.

79. As a result of the knowing and intentional action, inaction, conduct and polices of Defendants, Plaintiff has suffered, and will continue to suffer damages as set forth herein.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count VII
### Civil Aiding and Abetting
### Against All Defendants

80. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

81. There does exist an independent wrong, including that Plaintiff had their cryptocurrency stolen.

82. Defendants knew of the existence of those wrongs, including the theft of Plaintiff's cryptocurrency.

83. Defendants provided substantial assistance in effecting that wrong, including but not limited to: providing access to the Exclusive REMO device, PCS credentials, and Plaintiff's accounts; concealing that access for a period of time; intentionally destroying and/or failing to preserve evidence necessary to track those individuals responsible for the theft; and taking steps to conceal the identifies of those individuals responsible for the theft.

84. As a result of those knowing and intentional actions, inactions, conduct and polices of Defendants, Plaintiff has suffered, and will continue to suffer damages as set forth herein.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages,

including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count VIII
### Money Had and Received
### Against All Defendants

85. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

86. From November 16, 2021, Defendants became indebted to Plaintiff in the amount of a sum to be proven at trial, but of at least $128,724.88, for money had and received by defendants for the use and benefit of Plaintiff.

87. Neither the whole nor any part of this sum has been paid back to Plaintiff by Defendants, and there is now due, owing, and unpaid the sum to be proven at trial, which is at least $128,724.88, with interest accruing from the date each component of said sum was converted by Defendants.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

### Count IX
### Imposition of a Constructive Trust
### Against All Defendants

88. Plaintiff incorporates by reference all facts and allegations of this document, as if the same were fully set forth herein.

89. Upon information and/or belief, Plaintiff alleges that Defendants maintained funds, inter alia, in bank, brokerage and cryptocurrency accounts in their names or otherwise for their benefit.

90. Upon information and/or belief, Plaintiff alleges that Defendants purchased property with the converted funds belonging to Plaintiff.

91. By virtue of the wrongful acts alleged herein, Defendants held the property described and all profits and benefits derived therefrom above as a constructive trustee for Plaintiff's benefit.

WHEREFORE, Plaintiff demands entry of a judgment against Defendants for damages, including actual damages, compensatory damages, punitive damages, interest, expenses, costs, attorneys' fees and any other relief available.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment in their favor and against Defendants, and for the following:

A. Judgment for Plaintiff on all counts;

B. Actual damages;

C. Incidental damages;

D. Consequential damages;

E. Statutory damages;

F. Treble damages;

G. Punitive damages;

H. Attorneys' fees;

I. Costs and expenses;

J. Pre- and post-judgment interest; and

K. Such other relief as deemed just and appropriate.

Dated: September 30, 2025

Respectfully submitted,

THE LAW OFFICES OF RONALD S. CANTER, LLC

*/s/ Ronald S. Canter*
Ronald S. Canter, Esquire, #01024
2200 Research Boulevard, Suite 560
Rockville, Maryland 20850
301.424.7490 (telephone) | 301.424.7470 (facsimile)
rcanter@roncanterllc.com (e-mail)
**Counsel for Plaintiff**